IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LATEASE R. ALBRITTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | No. 5:03-cv-227-4 |
| ) | |
| CITY OF MACON, ) | |
| ) | |
| Defendant. ) | |

*ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION*

Plaintiff Latease Albritton moves the Court to reconsider its Order granting Defendant's motion for summary judgment in this case. In support of her motion for reconsideration, Plaintiff presents no new evidence, but instead contends that the Court overlooked certain testimony in the record and erred in finding that she had failed to establish a prima facie case of discrimination or retaliation. Upon review of the summary judgment Order and due consideration of the arguments of counsel, the relevant legal authorities, and the record of evidence in this case, the Court finds that Plaintiff has failed to show good cause for any amendment of the original ruling. Accordingly, the motion for reconsideration (Doc. 35) is **DENIED**.

Because Plaintiff filed her motion for reconsideration prior to the entry of final judgment in the case, her motion calls for the exercise of the Court's inherent discretion to reconsider and amend its orders any time prior to the entry of final judgment. See Fed. R. Civ. P. 54(b). In the interests of judicial efficiency and finality of decisions, "reconsideration of a previous order is an

extraordinary remedy to be employed sparingly." Groover v. Michelin North America, Inc., 90 F. Supp. 2d 1236, 1256 (M.D. Ala. 2000). Reconsideration is appropriate "only if the movant demonstrates [1] that there has been an intervening change in the law, [2] that new evidence has been discovered which was not previously available to the parties in the exercise of due diligence, or [3] that the court made a clear error of law." McCoy v. Macon Water Authority, 966 F. Supp. 1209, 1222-23 (M.D. Ga. 1997). "Additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." Groover, 90 F. Supp. 2d at 1256. "In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived." McCoy, 966 F. Supp. at 1223.

There is no indication of any new evidence or intervening change in the law, and Plaintiff has failed to show that the summary judgment Order was clearly erroneous. With regard to her claims of race and sex discrimination, Plaintiff's motion for reconsideration simply raises arguments that were considered by the Court in its original ruling on the motion for summary judgment. Plaintiff contends that she can support a prima facie case of discrimination by showing either that after her discharge she was replaced by someone who is outside her protected class or by showing that other similarly situated employees received dissimilar treatment. As the Court noted in its original Order, there is no evidence in the record sufficient to create a genuine issue of material fact as to either contention. There is no indication now that the Court overlooked any material evidence in drawing that conclusion.

Plaintiff's attempts to establish a prima facie case of discrimination at summary judgment were supported by conclusory statements rather than evidence. Plaintiff contended that she was

replaced by two named employees whom she described with the bare statement that they were not members of her protected class. There was no evidence as to the race or sex of either officer. In her supplemental brief in support of the motion for reconsideration Plaintiff suggests that Kelly Monroe is a white male and Wendell Collier a black male. She offers no evidence to support this belated assertion. Even if supported by evidence, her assertion that Wendell Collier is a black male would fail to support a prima facie case of racial discrimination. Unsupported by any evidence, her assertions regarding Collier and Monroe are insufficient to create a genuine issue of material fact as to sex discrimination, as well.

As an alternate means of establishing a prima facie case of discrimination, Plaintiff contended at summary judgment that other, similarly situated employees outside her protected class were treated differently. Plaintiff offered her own testimony that four male officers were on extended sick leave and were allowed to return to light duty assignments. Although she named these officers, there was no evidence to indicate that they were similarly situated to Plaintiff. In her motion for reconsideration Plaintiff has failed to show that the Court overlooked any evidence of the similarities between those officers' situations and Plaintiff's. Summary judgment was appropriate in the absence of such evidence.

As to Plaintiff's claim for retaliation, Plaintiff presents nothing to alter the original finding that the evidence presented failed to support a causal link between Plaintiff's protected activity and her ultimate discharge. The undisputed evidence was that Plaintiff filed her first discrimination lawsuit in 1999 and that the lawsuit was concluded on March 28, 2001, when a jury returned a verdict rejecting Plaintiff's claims. Chief Monroe, who made the decision to discharge Plaintiff, was living in Washington, D.C. during the entire duration of Plaintiff's first lawsuit and was not

employed by Defendant until June of 2001, two months after the suit was concluded. The decision to discharge Plaintiff was made on September 5, 2002, more than seventeen months after she had engaged in any protected activity.

Plaintiff correctly points out that the Court erred in its Order in stating that there was no evidence that Chief Monroe knew about Plaintiff's lawsuit when he decided to discharge her. Acknowledgment of this error, however, does not alter the outcome of the case. Chief Monroe testified at his deposition that he was aware that Plaintiff had sued the City. Fields Dep., p. 54. He denied any knowledge of the circumstances of the lawsuit, and there is no evidence in the record to show he was aware that Plaintiff's lawsuit was related to protected activity under Title VII. Although testimony from the deposition of Chief Monroe's chief of staff, Major Brady Fields, indicates that Major Fields may have informed Chief Monroe of Plaintiff's lawsuit during a December 2001 meeting at which Chief Monroe ordered a review of all officers on extended sick leave (Fields Dep., p. 35), the undisputed evidence indicates that Chief Monroe's decision to evaluate officers on extended sick leave was not aimed at Plaintiff individually, but was an attempt to determine which officers would be able to return to work.

Moreover, there was no decision to discharge or discipline Plaintiff at the December 2001 meeting. Plaintiff was not even contacted regarding her possible return to work until several months later, in the Spring of 2002. At that time, Plaintiff was asked to submit updated reports from her doctors regarding her disability status. In May and June of 2002, both of her treating physicians and the City's doctor submitted recommendations that Plaintiff return to work without limitation. Only at some later point did the nurse at the City Dispensary suggest to Major Fields that the City doctor

had changed his mind and recommended a light duty assignment.[1]  It remains bitterly disputed whether the alleged light duty recommendation came at the insistence of Plaintiff or upon further reflection by the City doctor.  The uncontradicted evidence does indicate that both Chief Monroe and Major Fields believed that the change in recommendation came at Plaintiff's insistence.  This conclusion is certainly consistent with common sense.  Absent a request from the Plaintiff, it is unclear why a City doctor would see fit to reverse the recommendation of Plaintiff's two treating physicians.[2]

Plaintiff was discharged only after she missed two appointments for an independent psychological examination to resolve the conflict between her treating physicians and the City's doctor.  The connection between her discharge and her prior lawsuit is simply too attenuated, both by time and by a long process of intervening circumstances, to suggest any retaliatory motive.

Finally, there remains insufficient evidence to show that Defendant's proffered non-discriminatory reason for discharging Plaintiff was pretextual.  The record indicates that Chief Monroe had initial concerns about employees malingering on sick leave.  This concern was not directed at Plaintiff alone, but at all employees on long-term sick leave.  Such concern would have been reinforced by the request or recommendation for a light duty assignment in contradiction of the recommendations of her treating physicians and compounded by Plaintiff's failure to attend the two scheduled appointments for an independent psychological examination.

---

[1]There is no written evidence of this light duty recommendation in the record of the case.  It apparently was delivered in a telephone call from the nurse to Major Fields.

[2]For reasons that the Court can only guess, neither party saw fit to submit testimony from the City's doctor, or even to provide his full name.

5

The record of evidence gives weight to Chief Monroe's ultimate conclusion that Plaintiff was not cooperating with his orders and did not desire to return to work. Although a reasonable jury might determine that Chief Monroe's decision was incorrect, an incorrect decision alone is not evidence of pretext. A discharge based on erroneous facts is not, without more, a discharge based on discrimination. See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). Thus, even if a jury were to conclude that Plaintiff herself did not insist on a light duty assignment, or were to accept Plaintiff's excuses for missing her two appointments, no reasonable jury could conclude that Chief Monroe lacked a substantial foundation for determining that Plaintiff was not cooperating with his attempts to return her to duty. Whether or not his conclusions were ultimately wrong, Chief Monroe's stated reason for discharging Plaintiff was amply supported by the information before him, and there is no evidence to show that his final decision was a pretext for retaliation or discrimination.

For the reasons set forth above, Plaintiff's motion for reconsideration is **DENIED**. The Clerk of Court is directed to enter **FINAL JUDGMENT** in favor of Defendant and to close this case.

**SO ORDERED**, this the 22nd day of September, 2005.


S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge


chw